WILLIAM C. and PATRICIA L. TURNER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Turner v. Commissioner
Docket No. 14287-80.
United States Tax Court
T.C. Memo 1981-598; 1981 Tax Ct. Memo LEXIS 147; 42 T.C.M. (CCH) 1434; T.C.M. (RIA) 81598; October 15, 1981. William C. Turner, pro se. Beatrice M. Pearson, for the respondent. DAWSON
MEMORANDUM FINDINGS OF FACT AND OPINION DAWSON, Judge: This case was assigned to and heard by Special Trial Judge Fred S. Gilbert, Jr., pursuant to the provisions of section 7456(c) of the Internal Revenue Code[1] and Rules 180 and 181, Tax Court Rules of Practice and Procedure.[2] The Court agrees with and adopts his opinion which is set forth below. *149 OPINION OF THE SPECIAL TRIAL JUDGE GILBERT, Special Trial Judge: Respondent determined deficiencies in petitioners' Federal income tax for the years 1976 and 1977 in the amounts of $ 750 and $ 875, respectively. Respondent also determined excise tax liabilities for those years in the amounts of $ 90 and $ 105, respectively. The only questions for decision are: (1) Whether petitioners are entitled to deductions for their 1976 and 1977 taxable years for their contributions to individual retirement accounts (IRAs), under sections 219 and 220; and (2) whether the petitioners made excess contributions to such accounts so as to be liable for the excise tax imposed on such contributions, under section 4973. FINDINGS OF FACT Most of the facts in this case were stipulated. The stipulation of facts and exhibits thereto are incorporated herein by this reference. Petitioners filed timely Federal joint income tax returns for their 1976 and 1977 taxable years. At the time the petition herein was filed, they resided in Fairfield, California. Petitioner William C. Turner (hereinafter referred to as petitioner) is a licensed physician and, at the time the petition was filed, held *150 the rank of colonel in the United States Air Force. Petitioner was born on April 2, 1922. He served on active duty as an enlisted man in the United States Army from August 17, 1942 to October 24, 1945. Following his discharge, he studied medicine, obtained his degree, and entered private medical practice. On July 10, 1975, petitioner was commissioned and began a six-year tour of active duty as a physician with the United States Air Force. Before receiving his commission, petitioner was required by the Air Force to sign a document styled "Statement of Understanding (Retirement)," wherein he acknowledged that, under then current laws, it would be impossible for him to complete sufficient active duty service to qualify for retirement benefits under the Air Force retirement plan. Subsequent to the years in question, and apparently in connection with the audit of his tax returns, petitioner made further inquiry regarding the possibility of his being eligible to receive retired pay. He was advised by the Headquarters Air Force Manpower and Personnel Center, by letter dated "21 September 1978," that he was not then, nor would he be in the future, entitled to retired pay from the *151 Air Force based on length of service or age as provided for in Chapters 67 or 867, Title 10, United States Code. In their joint Federal income tax return for 1976, petitioners claimed a deduction under section 219 for a contribution of $ 1,500 to an IRA. In their 1977 tax return, a deduction of $ 1,750 was claimed under section 220 for contributions of $ 875 to each of the petitioners' separate IRAs. Respondent disallowed both deductions after determining that petitioners were ineligible to open IRAs since, during both years, petitioner was an "active participant" in a plan established by the United States for its employees. OPINION Section 219(a) allows an individual to claim a deduction for cash contributions to an individual retirement account. Eligibility to claim the deduction is limited, however, by section 219(b)(2), which provides: (2) Covered by Certain Other Plans.-- No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year -- (A) he was an active participant in -- (iv) a plan established for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality *152 of any of the foregoing, * * * Section 220(a) provides for similar deductions for cash contributions to the separate IRAs of an individual and his spouse. A parallel to the restriction of section 219(b)(2) is contained in section 220(b)(3), which provides: (3) Coverage under certain other plans.--No deduction is allowed under subsection (a) for an individual for the taxable year if for any part of such year -- (A) he or his spouse was an active participant in -- (iv) a plan established for its employees by the United States, by a State or political subdivision thereof, or by an agency or instrumentality of any of the foregoing, * * * Respondent's denial of petitioners' deductions for contributions to their IRAs for 1976 and 1977 is based on respondent's determination that, during those years, petitioner was an "active participant" in the Air Force retirement plan, and was, therefore, within the restrictions of sections 219(b)(2) and 220(b)(3). Petitioner argues that he should not be considered an active participant in the Air Force plan due to the stated impossibility of his ever collecting any benefits under the plan. Under the Air Force retirement plan, an individual *153 is required to serve 20 years on active duty in order to be eligible for retirement benefits. [3] The plan also provides that each commissioned officer whose reserve grade is below that of major general will normally be retired or discharged on the last day of the month in which he becomes 60 years of age. [4] Since petitioner entered the Air Force at age 53, with only three years of prior military service, the combined effect of these provisions, as interpreted to him by the Air Force, was to make it a practical certainty that he would never qualify for military retired pay. Despite these facts, the respondent contends that the petitioner was, nevertheless, an "active participant" in the Air Force plan. The Code does not define the term "active participant." Guidance as to its meaning is found, however, in the report submitted by the House Committee on Ways and Means at the time of the enactment of the IRA provisions. The report states: An individual is to be considered an active participant in a plan if he is accruing benefits under the plan even if he only *154 has forfeitable rights to those benefits. Otherwise, if an individual were able to, e.g., accrue benefits under a qualified plan and also make contributions to an individual retirement account, when he later becomes vested in the accrued benefits he would receive tax-supported retirement benefits for the same year both from the qualified plan and the retirement savings deduction. * * * [H. Rept. 93-807 (1974), 1974-3 C.B. (Supp.) 364.] While it may be plausible in many cases to speak of benefits "accruing" even when there is some uncertainty that they will ever vest, we do not believe that benefits can reasonably be said to have accrued when Federal statutory law makes it a virtual certainty, as was here the case, that those benefits will never actually be received. We are, therefore, unconvinced that petitioner is within even the expansive boundaries of the definition of "active participant" suggested by the Committee. We do not believe that the decision in Orzechowski v. Commissioner, 69 T.C. 750 (1978), affd. 592 F.2d 677 (2d Cir. 1979), cited by respondent in support of his position, is dispositive of this case. The taxpayer *155 in Orzechowski was held to have been an active participant in his employer's pension plan, even though his rights to receive benefits under the plan had not vested during the year in question and were, in fact, forfeited in a later year when a decline in his employer's business caused the taxpayer to be discharged. That case is distinguishable on its facts from the present one. The vesting of Orzechowski's pension benefits was made uncertain only by the vicissitudes of the business world. Had he continued to work, he soon would have completed the minimum period of employment and his rights would have vested. In any event, they were in the process of vesting during the year in question. In the present case, existing Federal statutory law precludes the vesting of petitioner's rights to retirement benefits. We consider this statutory barrier to the vesting of petitioner's rights too significant a factor to permit us to decide the present case on the basis of the Court's holding in Orzechowski. Respondent has suggested three possible courses of events under which petitioner might receive retirement benefits as a result of his years of service in the Air Force. First, respondent *156 argues that petitioner may yet remain on active duty long enough to qualify for retired pay based on length of service. For example, respondent points out that, in time of war, members of the Retired Reserve may be ordered to return to active duty. [5] Next, respondent points out that petitioner might qualify for military retired pay based on a disability. [6] Third, and finally, respondent suggests that petitioner might receive credit for his years of active military service if he becomes a Federal civilian employee. [7]
We do not deny the theoretical possibility of the events that respondent describes, nor do we doubt that imaginative minds could think of still other scenarios not entirely impossible of occurrence under which petitioner might conceivably one day draw military retirement pay. We prefer, however, to view the facts from a practical standpoint, as, indeed, petitioner was forced to do in planning for his retirement years. In making those plans, petitioner could hardly have been expected to place *157 much reliance upon the possibility that war, disability, or his securing a new job with the government at the age of 59 would one day cause rights to military retired pay to vest in him. Thus, we find that those possibilities do not constitute the serious threat of a double benefit to petitioner that the Committee report suggests the Congress sought to prevent. On the contrary, we find that petitioner's conclusion that, as a practical matter, existing Federal statutory law effectively foreclosed the possibility of his ever collecting military retirement pay was an eminently reasonable one. Under the circumstances, it would require a strained application of language to call petitioner an active participant in the military retirement plan during the years in question. Accordingly, we hold that petitioner was not an active participant in the Air Force retirement plan in those years, and was, therefore, entitled to open and make contributions to IRAs. Our holding on the first issue also disposes of the second. Since petitioners were entitled to open IRAs, their contributions, which were within the statutory limits, were not excess contributions, and they are, therefore, not liable *158 for the excise tax imposed by section 4973. In accordance with the above, Decision will be entered for the petitioners. Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended, unless otherwise indicated. ↩
2. Pursuant to the order of assignment, on the authority of the "otherwise provided" language of Rule 182, Tax Court Rules of Practice and Procedure↩, the post-trial procedures set forth in that rule are not applicable to this case.
3. 10 U.S.C. section 8911 (1976)↩. 4. 10 U.S.C. section 8843 (1976)↩.
5. 10 U.S.C. section 675↩ (1976). 6. 10 U.S.C. section 1201 (1976)↩. 7. 5 U.S.C. section 8332 (1976)↩.